#### 77798. LAWTON v. THE STATE.
(381 SE2d 106)

McMURRAY, Presiding Judge.

Defendant appeals his conviction of the offenses of attempted

armed robbery (criminal attempt to commit armed robbery), aggravated assault, and possession of a firearm during the commission of a crime. *Held*:

During voir dire defense counsel identified himself as a legislator and asked the panel whether any position he may have taken or statement he may have made in his role as a legislator had so offended one of them as to prevent that potential juror from giving the case sub judice his or her fair and undivided attention. There is no indication on the record that any member of the panel responded in the affirmative to this inquiry. Subsequently, during the voir dire of a prospective juror who was an assistant principal of a school, the trial court would not permit a response to defense counsel's inquiry as to whether the potential juror would "hold it against" him because he was opposed to a school bond referendum.

Defendant's motion for mistrial was stated as follows: "We've got two matters, Your Honor. The first matter, I'd like to move at this time that Defendant's motion for a mistrial [be] based on the following grounds. The Court has severely restricted me in my voir dire. The essence of this case is going to rest on identification testimony with the showing of photo spreads. In addition to limiting my voir dire, it's also a point that I readily realize that this is a court of law and not a political arena, but the purpose of voir dire is to allow for the selection of jurors who can decide a case fair and impartially. My question being posed about the bond referendum is because it's a very well known in this community . . . one of the hottest issues at the present time. I've made my position known. A public rebuke by the Court for posing that question so embarrassed me in front of the Jury that I don't think Mr. Lawton can now get a fair trial, based on the position . . . of the jurors have for his counsel. Therefore, I move for a mistrial."

On appeal defense counsel contends that the trial court improperly limited voir dire by depriving him of his rights to ascertain whether a juror, an assistant principal of a local school, "[held] it against him" because he took a "very public position" against a local school bond referendum issue. However, there is nothing in defendant's motion for mistrial raising this issue which is now argued on appeal by defendant for the first time.

Defendant's motion for mistrial, as quoted above, raises two issues. the first issue is the restriction of voir dire in connection with the issue of identification. This first issue obviously arises for the trial court's sustaining the State's objection during voir dire, anticipating defense counsel "asking that the jury prejudge this case and any identification [evidence] and credibility of the witness." The second issue presented involves an alleged public rebuke by the trial court for posing the question concerning the school bond referendum. There is no

issue raised as to restricting voir dire in regard to the school bond referendum.

"Grounds which may be considered on motion for new trial or on appeal are limited to those which were raised at trial. *Pulliam v. State*, 236 Ga. 460, 465 (224 SE2d 8); *Fowler v. State*, 155 Ga. App. 76 (2) (270 SE2d 297). As the issue argued on appeal was not raised before the trial court, this enumeration of error presents no question for consideration on appeal." *Proffitt v. State*, 181 Ga. App. 564, 566 (2) (353 SE2d 61).

Even if defendant's motion for mistrial is viewed as sufficient to preserve the issue presented on appeal, there was no error in the denial of defendant's motion. Defense counsel inquired as to whether a potential juror might have a bias respecting him, arising from his actions or statements in his capacity as a state legislator. Thus, the subsequent inquiry by defense counsel regarding whether bias arose from his position on a specific issue, the school bond referendum, was repetitive. While a defendant in a criminal case has an absolute right to have prospective jurors questioned as to those matters specified in OCGA § 15-12-133, control of voir dire examination is within the sound legal discretion of the trial court, and the appellate courts should not interfere unless it is shown to have been manifestly abused. *Whitlock v. State*, 230 Ga. 700, 705 (5) (198 SE2d 865); *Messer v. State*, 247 Ga. 316, 323 (276 SE2d 15). In the case sub judice, the trial court did not abuse its discretion in preventing repetitive inquiries. *Quick v. State*, 166 Ga. App. 492, 497 (8) (304 SE2d 916).

*Judgment affirmed. Carley, C. J., and Sognier, J., concur. Deen, P. J., and Beasley, J., concur and also concur specially. Banke, P. J., Birdsong, Pope and Benham, JJ., dissent.*

BEASLEY, Judge, concurring specially.

I concur fully. As to the substantive issue, it was not a reversible legal error under OCGA § 15-12-133 to rule as impermissible the particular question asked, in the context of the proceedings. It bears particularized scrutiny.

Counsel had asked several broad questions of the whole panel concerning news reports and any outside influences, after somewhat disparaging comments about news reports:

"The question was asked earlier about any news spots you may have heard and, like many of you, I watch the news also. I might add, I don't believe all that I watch or read in the papers all the time, but I watch it. Those of you who may have seen the spots on either one of the television stations or in the News-Press, my question is, I know a lot is said. My concern is, from what you've heard or what you may have read, do any of you feel that for this case which you're here for today, that you would make certain to listen to the evidence coming

out of this courtroom and no other place?

"Do any of you have problems with trying to add in or augment what you learn here today with what you've heard on the outside?

"Could you be able to insulate any outside information from what you hear in court today? . . .

"My question is, do any of you feel that you are not able to insulate, wipe out, cast aside, push aside, any outside information, and base your decisions on what comes from — this Court will charge you on at the conclusion of this trial, possibly at the beginning as well — and to make your decision on what comes from this courtroom and this courtroom only?

"Do you any of you feel that having seen a TV newscast or read something in our local papers that would prevent you from drawing a line and insulating yourself from that?"

No adverse answer was given to any of these questions by any of the prospective jurors, including the assistant principal, except one TV cameraman who was familiar with TV coverage of the case itself, and he was excused for cause.

Later, counsel stated and asked:

" . . . some would say unfortunately, some would say fortunately, in my role as a legislator, have any of you been offended by any positions I may have taken that would prevent you — you've been so offended, or some statement I may have made that may have rankled you to the point — if you have, please raise your hand — that might prevent you from giving this case your fair and undivided attention?"

None of the panel responded, including the assistant principal.

Shortly thereafter, the individual voir dire commenced. The assistant principal was asked: "Mrs. Tuten, you wouldn't hold it against me because I'm against the bond referendum, would you? You wouldn't hold that against me, would you?"

The court interjected: "Counselor, that's an improper statement."

Counsel evoked further comment by the court by arguing: "Your Honor, for the record, if I can address for the record, Your Honor, I've taken a very public position about the bond referendum and she works for the school system."

The court reaffirmed its ruling and then stated the legal principle which had been alluded to earlier: "Counselor, we're not putting politics into this trial. Disregard it. Everybody is bound by the law and by the facts that are presented in evidence."

Counsel concluded: "That's all I have. Thank you."

The court's refusal to permit counsel to inject his position, taken as a public official on a totally unrelated political matter, in the ascertainment of impartiality of a juror who might be affected by the final outcome of the public's on the matter and who had earlier indicated no belief she would be subject to any outside influences in reaching a

decision in this case, does not cross the law's bounds.

I am authorized to state that Presiding Judge Deen joins in this special concurrence.

POPE, Judge, dissenting.

I disagree with the majority's conclusion that the trial court did not err in prohibiting defense counsel from questioning a potential juror concerning whether she would "hold it against him" because he was opposed to a local school bond referendum.

"Although control of voir dire examination is normally within the discretion of the trial court, it has been held that the defendant in a criminal case has an absolute right to have his prospective jurors questioned as to those matters specified in OCGA § 15-12-133. [Cit.] Hence, it (is) reversible error for the trial court to refuse permission to appellant's counsel to ask such questions of each juror, for such ruling denie(s) appellant a substantial right granted him by statute. (Cits.)" (Punctuation omitted.) *Mitchell v. State*, 176 Ga. App. 32, 34 (335 SE2d 150) (1985).

Here counsel sought by his question to ascertain whether the juror, an assistant principal of a local school "[held] it against him" because he took a "very public position" against a local school bond referendum issue. Inasmuch as the question related to "[a] fact or [circumstances] indicating any inclination, leaning, or bias which the juror might have respecting . . . counsel," it was clearly within the purview of OCGA § 15-12-133. "Accordingly, we hold that [the defendant] had a statutory right to ask the question disallowed in the instant case. . . .

"(W)here a defendant in a criminal case has been deprived of his or her rights under OCGA § 15-12-133 . . . to examine prospective jurors on voir dire, the burden is on the (S)tate to show that the error was harmless. (Cits.) This holding applies even though the defendant did not exhaust his or her peremptory strikes." *Mitchell* at 34. In the case at bar the state argues that the error was harmless because the question was repetitive of an earlier question counsel propounded to all the potential jurors concerning possible prejudice or bias towards him based on his position as a state legislator. The record shows, however, that the disallowed question concerned counsel's actions on a local community issue and was unrelated to his legislative position.

I also disagree with the majority's conclusion that defendant failed to preserve this issue for appeal. Although the bases for defendant's motion for mistrial may not have been stated with absolute or perfect clarity, in addition to stating that the court had embarrassed him in front of the jury, counsel also argued that his voir dire had been improperly restricted. Accordingly, I would reverse defendant's conviction.

I am authorized to state that Presiding Judge Banke, Judge Birdsong, and Judge Benham join in this dissent.

DECIDED MARCH 17, 1989 —
REHEARING DENIED MARCH 29, 1989.

*Allen & Perry, Roy L. Allen II, Kevin E. Perry*, for appellant.
*Spencer Lawton, Jr., District Attorney, J. Clayton Culp, Assistant District Attorney*, for appellee.