## 46317. TATUM v. THE STATE.
### (380 SE2d 253)

Bell, Justice.

The appellant, John Leonard Tatum, was found guilty of the malice murder of his ex-wife, Barbara Ann Tatum. The trial court sentenced Tatum to life in prison.[1] Tatum now appeals. He contends that the trial court erred in denying his request for funds to hire an expert to support his theory that his handgun discharged inadvertently or "hangfired." He also contends that the trial court erred in not having a court reporter transcribe the voir dire of prospective jurors, and that a state's expert was erroneously permitted to testify beyond his field of expertise. We affirm.

John and Barbara were married in 1965, separated in 1983, and divorced in 1985. After their separation, they did not communicate until the day of the crime. Shortly before the crime, according to several witnesses, John threatened to kill Barbara. Moreover, after the shooting, John told a friend that on three occasions he had dreamed of killing Barbara, so he did. In a statement John made to the police, which was admitted into evidence at trial, John described the follow-

---

[1] The crime occurred on November 6, 1985. Tatum was indicted for the crime on March 6, 1986. Following a jury trial, Tatum was found guilty and sentenced on May 22, 1987. Tatum filed a motion for new trial on June 5, 1987. The court reporter certified the transcript on April 20, 1988. Tatum amended his motion for new trial on August 3, 1988, and the trial court denied the motion on August 26. Tatum filed his notice of appeal on September 20, and the appeal was docketed in this court on October 24, 1988. The appeal was submitted on briefs without oral arguments on December 9.

ing sequence of events: On November 6, 1985, John spoke with Barbara on the telephone, and made arrangements to meet with her that evening. Barbara picked up John about 7:30 p.m., and they drove to a package store where they bought a six-pack of beer. Shortly after purchasing the beer, John and Barbara, while driving, began to argue. Barbara then drove into the parking lot of a local Krystal restaurant and parked the car. The couple continued to argue, prompting John, who had a holstered gun stuck in his belt, to get out of the car. When he did so, the gun fell out of the holster and dropped to the ground. He picked the gun up, and looked back in the car from the passenger door to talk to Barbara, who was sitting in the driver's seat. At that time the gun discharged, striking Barbara in the head. John then ran from the scene.

At trial John related essentially the same events as those described in his statement.

A friend of Tatum's testified that Tatum told her that the gun dropped to the ground and fired, and that he left the gun where it fell. The gun was found in a wooded area some 350 feet from the Krystal.

A man eating at the Krystal that evening testified at trial. He stated that he heard something that sounded like a gunshot. He then looked around and saw a male holding a beer can in his left hand and a pistol in his right hand stagger away from a car. He stated that the man appeared highly intoxicated, and that the man walked from the scene in a nonchalant manner.

Barbara died from a gunshot wound to the right temple. She suffered powder burns on her face, and expert testimony established that the gunshot was fired from a distance of six to twelve inches. A state firearms expert, Richard Ernest, stated that he microscopically examined the gun used in the shooting, and discovered no evidence that the gun had ever been dropped on asphalt or concrete. Moreover, Ernest also stated that if the gun in question were dropped to the ground, it would have to hit the ground at one specific angle to cause the firing mechanism to operate. He added that, in his opinion, if the gun had been dropped, causing the firing mechanism to operate, the gun would have discharged immediately.

1. Having examined the evidence in the light most favorable to the verdict, we conclude that the evidence is sufficient for a rational trier of fact to have found Tatum guilty of murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. In his first enumeration of error Tatum contends that the trial court erred in denying his request for funds to hire an expert to sup-

port his theory that the gun "hangfired,"[2] accidentally causing Barbara's death.

In *Roseboro v. State*, 258 Ga. 39, 41 (3) (d) (365 SE2d 115) (1988), we held that

[a] motion on behalf of an indigent criminal defendant for funds with which to obtain the services of a scientific expert should disclose to the trial court, with a reasonable degree of precision, why certain evidence is critical, what type of scientific testimony is needed, what that expert proposes to do regarding the evidence, and the anticipated costs for services. Lacking this information, a trial court will find it difficult to assess the need for assistance.

Additionally, *Roseboro* quotes with approval a federal circuit-court case that held that a request for funds by an indigent must create a reasonable probability that expert assistance is necessary to the defense and that without such assistance the defendant's trial would be rendered fundamentally unfair. *Roseboro*, supra, 258 Ga. at 41, fn. 3, quoting *Moore v. Kemp*, 809 F2d 702, 717-718 (11th Cir. 1987) (en banc), cert. denied, 481 U. S. 1054 (1987). Accord *Little v. Armontrout*, 835 F2d 1240, 1243-1244 (8th Cir. 1987) (en banc), cert. denied ___ U. S. ___ (108 SC 2857, 101 LE2d 894) (1988). *Moore*, supra, 809 F2d, and *Little*, supra, 835 F2d, are based upon the principles enunciated in *Ake v. Oklahoma*, 470 U. S. 68, 79-83 (105 SC 1087, 84 LE2d 53) (1985).

Moreover, a trial court has the discretion, bearing in mind the foregoing guidelines, to grant or deny a motion for funds for an expert witness, and an appellate court will not disturb the trial court's exercise of its discretion unless the court has abused the discretion. *Roseboro*, supra, 258 Ga. at 39-40 (3) (a); *Jackson v. State*, 249 Ga. 751, 755 (3) (295 SE2d 53) (1982). Our review of the record reveals that Tatum failed to show with reasonable precision that the testimony he requested was critical or reasonably necessary to his defense, and that without the testimony his trial would be rendered fundamentally unfair. Moreover, Tatum failed to inform the court how much his experts would cost. For these reasons we conclude that the trial court did not abuse its discretion in denying Tatum's request for funds.

3. Tatum next contends that his conviction must be reversed because the first day of voir dire of the jury was not transcribed. We

---

[2] "Hangfire" refers to a delay in the functioning of the explosive compound contained in the cartridge after the operation of the weapon's firing mechanism, causing the weapon to discharge an abnormally long interval after the operation of the firing mechanism.

disagree with this enumeration for two reasons. First, during the actual trial of the case, the trial court made a statement for the record that Tatum had waived the presence of the court reporter for the first day of voir dire. Tatum did not object to this statement, and has therefore waived his right to raise this issue on appeal. Further, Tatum merely objects to the failure to record the voir dire; he does not allege that any harm resulted from that omission. For this reason we find no reversible error. *Smith v. State*, 251 Ga. 229, 230 (2) (304 SE2d 716) (1983); *Marshall v. State*, 239 Ga. 101, 103 (2) (236 SE2d 58) (1977).

4. In his final enumeration of error Tatum contends that the trial court erred in permitting Dr. Burton to testify concerning hangfire. Tatum contends that the subject of hangfire was outside the field of Dr. Burton's expertise. Pretermitting the question whether Dr. Burton was an expert in the field of firearms,[3] the record shows that Tatum did not object to Dr. Burton's testimony on the ground that it was beyond his field of expertise. Tatum therefore has waived his right to raise this issue on appeal. *Williams v. State*, 255 Ga. 97, 100 (4) (335 SE2d 553) (1985).

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 22, 1989.

*Ralph W. Kearns, Jr.,* for appellant.

*Thomas J. Charron, District Attorney, Debra H. Bernes, Nancy I. Jordan, Assistant District Attorneys, Michael J. Bowers, Attorney General, Eddie Snelling, Jr., Assistant Attorney General,* for appellee.

---

[3] The record shows that Dr. Burton testified that he had studied ballistics and had performed several thousand ballistics examinations.