A91A1886. SANDERS v. THE STATE.
(419 SE2d 24)

POPE, Judge.

Appellant/defendant appeals his conviction for armed robbery and aggravated assault. The jury was authorized to find defendant approached Wilma Wynn outside her apartment and ordered Wynn to give him her keys to her car and her purse. Defendant was accompanied by two black males. Defendant had a gun wrapped in a coat pointed at her during the robbery. Wynn never saw the gun but believed it was a sawed-off shotgun.

Shortly after robbing Wynn and fleeing in her automobile, defendant, while driving Wynn's car, struck a policeman who was reporting for duty. Although defendant attempted to leave the scene of the accident without stopping, when the officer flashed his lights several times at the car defendant was driving, he stopped. When the officer attempted to verify defendant's insurance and driver's license and the license of an occupant of the vehicle whom defendant claimed owned the vehicle, defendant pushed the policeman down and fled in the vehicle. The officer pursued the vehicle, which left the road at a red light area. The two occupants fled the vehicle at that time. The officer exited his vehicle and noticed defendant pointing a rifle at him. The officer took cover behind his car. Defendant attempted to run around his vehicle, but fell and dropped his weapon. The officer was then able to apprehend defendant.

1. Defendant argues that the trial court erred by prohibiting defense counsel from questioning the jurors about possible bias they may have against defense counsel. Defense counsel posed the following question to the jury during voir dire: "Ladies and Gentlemen, as you learned or you had indicated to you I'm a criminal defense attorney, and I'm sure that some of you have some preconceptions in your

mind of the role that a defense lawyer plays. I'll be interested in hearing those. Is there anyone here, for whatever reason, thinks that *I* would trick you or try to trick you just because *I'm* a criminal defense lawyer?" (Emphasis supplied.)

Defendant argues that the trial court's refusal to allow that question to be posed on voir dire denied his right pursuant to OCGA § 15-12-133 to question the jurors about "any inclination, leaning, or bias which the juror might have respecting the subject matter of the action *or the counsel* or parties thereto . . . ." (Emphasis supplied.) This court has repeatedly held that a criminal defendant has an absolute right to question potential jurors about any matters specified in OCGA § 15-12-133. *Mitchell v. State*, 176 Ga. App. 32 (3) (335 SE2d 150) (1985); *Craig v. State*, 165 Ga. App. 156 (299 SE2d 745) (1983). When a criminal defendant has been deprived of this right, the burden then falls to the State to show that the error was harmless. *Henderson v. State*, 251 Ga. 398, 403 (306 SE2d 645) (1983).

Although the question posed by defense counsel was within the purview of OCGA § 15-12-133, in light of the overwhelming evidence of defendant's guilt in this case, we hold that the trial court's refusal to allow that question to be addressed to potential jurors was harmless error. As the facts set forth above indicate, the defendant was apprehended shortly after he robbed Ms. Wynn. At the time he was apprehended he was driving her car and carrying a rifle. Both Ms. Wynn and the police officer who apprehended defendant identified him at trial. In fact, as will be discussed below, the only issue raised as to sufficiency of the evidence by defendant is whether it can be properly inferred that defendant had a weapon during the robbery and assault. In light of the overwhelming evidence of guilt in this case, the State met its burden of showing it is "highly probable" that the limitation on voir dire was harmless error. See *Mathis v. State*, 176 Ga. App. 362, 363 (336 SE2d 299) (1985); cf. *Henderson*, supra (prohibiting question about whether a juror's family had ever worked for law enforcement was not harmless error when critical witnesses to prove the State's case against defendant were law enforcement personnel.)

2. Defendant argues that the evidence was insufficient to support defendant's conviction for armed robbery because the use of an offensive weapon during the crime was not established beyond a reasonable doubt. Wynn testified that the defendant had a gun wrapped in a coat which he pointed at her while he took her keys and pocketbook. Although Wynn testified that she did not actually see the gun, the law in this state is well-settled that the presence of a weapon during the commission of a robbery may be established by evidence from which the presence of a weapon may be inferred, regardless of whether the weapon was actually seen. *Tate v. State*, 191 Ga. App.

727 (2) (382 SE2d 688) (1989); *Hughes v. State*, 185 Ga. App. 40, 41 (363 SE2d 336) (1987). Wynn's testimony was sufficient evidence to support the defendant's conviction for armed robbery.

3. Defendant contends that the trial court erred in charging the jury on flight. Shortly after this case was tried the Georgia Supreme Court issued its decision in *Renner v. State*, 260 Ga. 515 (397 SE2d 683) (1990), in which it held that in all cases tried after January 10, 1991, the State may offer evidence of and argue flight, but it shall be error for the trial court to charge the jury on flight. Id. at (3). While the charge on flight at defendant's original trial is not error, pursuant to *Renner*, the charge would be error on retrial.

4. Defendant asserts that the trial court's charge on the presumption of witnesses' truthfulness constituted unconstitutional burden-shifting. "Although we have held that such presumption-of-truthfulness charges can be misleading, and are of little positive value, and have recommended that their use be discontinued, we have nevertheless noted that they have (been) held not to be, as [defendant contends unconstitutional] burden-shifting." (Citations and punctuation omitted.) *Ranson v. State*, 198 Ga. App. 659 (6) (402 SE2d 740) (1991).

5. Defendant next contends that the trial court erred in denying his motion to suppress Wynn's photographic lineup identification of defendant. Defendant complains that his photograph had a different texture than the others and the other men did not have full facial hair. All of the men in the photographs were black men, approximately the same age and description as defendant, with some facial hair. Taking into consideration the totality of the circumstances, we hold that any suggestiveness in the pretrial identification procedures used by the police did not rise to a substantial likelihood of mistaken identification. *Jones v. State*, 251 Ga. 361 (1) (306 SE2d 265) (1983).

6. Defendant argues that the trial court should have granted his motion for mistrial because the State's witness impermissibly placed his character in issue. He contends the investigating detective testified that he picked over mug shots of the defendant when preparing the photographic lineup, revealing to the jury that the defendant had several previous arrests. The testimony about which defendant complains follows: "Mr. Sanders' photograph in the City of Atlanta where he was arrested was apparently mishandled and was not developed, so when he went to the Fulton County Jail, I obtained a photograph from the Fulton County I. D. section. I picked over mug shot photographs from I. D. section until I got . . . a cross section of six individuals that apparently their appearances closely resemble each other." The transcript clearly reveals the mug shots that the witness looked through were of men arrested in Fulton County in order to obtain photographs for a lineup. This enumeration of error is without merit.

7. Defendant argues that he was entitled to a mistrial because during his closing argument the district attorney stated "[i]f the defense wanted any witness here that wasn't called by the state, they would be here." It is well settled in Georgia that prosecutors may make such comments. *Wilson v. Zant*, 249 Ga. 373 (4) (290 SE2d 442), cert. denied, 459 U. S. 1092 (103 SC 580, 74 LE2d 940) (1982); *Shirley v. State*, 245 Ga. 616 (1) (266 SE2d 218), cert. denied, *Shirley v. Georgia*, 449 U. S. 879 (101 SC 227, 66 LE2d 102) (1980); *Contreras v. State*, 242 Ga. 369 (3) (249 SE2d 56) (1978).

*Judgment affirmed. Cooper, J., concurs. Birdsong, P. J., concurs specially.*

BIRDSONG, Presiding Judge, concurring specially.

1. I concur with the majority opinion, except as to Division 1 as to which I concur specially.

2. Appellant asserts the trial court erred in prohibiting defense counsel from questioning the jurors about possible bias against defense attorneys.

During voir dire appellant's counsel expressed his understanding to the prospective jurors that none of the jurors knew "any of" the counsel involved in the trial. Further, the jurors did not express any reason, when asked, why they could not be fair and impartial jurors in this case after hearing all the testimony. The trial transcript subsequently reflects the following pertinent colloquy: "[DEFENSE COUNSEL]: . . . I'm a criminal defense attorney, and I'm sure that some of you have some preconceptions in your mind of the role that a defense lawyer plays. I'll be interested in hearing those. Is there anyone here, for whatever reason, thinks that I would trick you or try to trick you just because I'm a criminal defense lawyer. [PROSECUTOR]: *I object to this question.* It's not relevant as to whether or not the jurors have any bias sitting as a juror on this case. [DEFENSE COUNSEL]: I submit it has direct relevance to bias and prejudice if they would be disinclined to believe a defense lawyer or simply by virtue of the fact it would show that they are directly biased or prejudiced against the defense. [TRIAL COURT]: I don't expect you to testify in this case, though. [DEFENSE COUNSEL]: No sir, your honor. I think I'm entitled to go into whether, because of the fact that this is a criminal case and I'm a defense attorney, that because of the role that we play in society that some people may not give us a fair shake. So I would ask to be permitted to question on that. [TRIAL COURT]: *I sustain the objection.* Ladies and gentlemen, the defense counsel will not be testifying usually in a case. You won't have an occasion to believe or disbelieve him about this matter. You should be controlled by the evidence in this case, if there's any presented to you." (Emphasis supplied.)

In criminal cases, the right to examine each prospective juror in order to secure an impartial jury is set out in OCGA § 15-12-133. This statute expressly establishes, inter alia, a right of counsel to make certain inquiries of the individual jurors regarding any matter or thing which would illustrate any interest of the juror in the case, including "any inclination, leaning, or bias which the juror might have respecting . . . the counsel or parties thereto . . . ." OCGA § 15-12-133. As a general rule, "[a]lthough control of voir dire examination is normally within the discretion of the trial court, it has been held that the defendant in a criminal case has an absolute right to have his prospective jurors questioned as to those matters specified in OCGA § 15-12-133. [Cit.] 'Hence, it (is) reversible error for the trial court to refuse permission to appellant's counsel to ask such questions of each juror, for such ruling denie(s) appellant a substantial right granted him by statute. (Cits.)' [Cit.] It has also been held that OCGA § 15-12-133 encompasses questions regarding possible racial prejudice and bias, even when such questioning would not be constitutionally required. [Cit.]" *Mitchell v. State*, 176 Ga. App. 32, 34 (3) (335 SE2d 150).

At the onset it is noted that the question in issue is a preparatory question — one which is indirectly probative of counsel bias. As such, this question is within that broad class of questions falling within the permissive parameters of OCGA § 15-12-133. Compare *Lawton v. State*, 191 Ga. App. 116 (381 SE2d 106) (majority, specially concurring, and dissenting opinions). "Accordingly . . . appellant had a statutory right to ask the question disallowed in the instant case, as it related to the subject of 'bias which the juror(s) might have respecting' him. OCGA § 15-12-133." *Mitchell*, supra at 34 (3). However, this does not end our judicial inquiry. Contrary to the scope of the enumerated error (compare *Chezem v. State*, 199 Ga. App. 869, 870 (2) (406 SE2d 522) and *Rigenstrup v. State*, 197 Ga. App. 176, 179 (2) (398 SE2d 25)) that the trial court prohibited "defense counsel from questioning the jurors about possible bias against defense attorneys," the record reflects that the trial court merely sustained the State's objection to the question actually posed by defense counsel. Thus, the ruling of the trial court did not prevent appellant's defense counsel from making further inquiry of the jury individually as to whether they had any bias towards him, or prevent counsel from rewording and repositing his original question to the jury either before or after asking other questions regarding the jury's possible bias toward the defense attorney. Moreover, the record shows that after the ruling was made and the curative-type instruction given, defense counsel abandoned any further reasonable attempts to inquire as to the potential bias of individual jurors toward criminal defense lawyers in general or toward himself in particular. The record in its current posture establishes that appellant was not, as specifically enumerated,

prohibited from any inquiry into individual juror's bias toward defense counsel, but was at most precluded from asking one particularly worded question; a question which, as framed, was only indirectly probative of the bias question, and which even if answered in the affirmative by all jurors would not per se establish a disqualifying bias. Thus, if counsel reasonably expected to establish bias on the part of an individual juror he should have asked follow-up, probative questions, at least until he was definitively prohibited from conducting an effective inquiry into the area by the trial court. "The failure to timely exercise due diligence in the voir dire waived the right to assert this allegation of error." *Thurmond v. Bd. of Commrs. of Hall County*, 174 Ga. App. 570, 571 (2) (330 SE2d 787). Moreover, the conduct and trial tactics of appellant's counsel in failing to pursue the bias inquiry following the court's sustaining of the State's objection and its giving of a curative-type instruction, aided in the restriction of appellant's voir dire inquiry as to counsel bias (see generally *Wilburn v. State*, 199 Ga. App. 667, 669 (2) (405 SE2d 889)), and in this particular instance is also tantamount to acquiescence by conduct (cf. *Tatum v. State*, 259 Ga. 284, 287 (3) (380 SE2d 253)).

### ON MOTION FOR RECONSIDERATION.

On motion for reconsideration, defendant argues that a panel of this court does not have authority to overrule the earlier opinion issued in this case by the whole court. The original opinion in this case has been vacated and withdrawn with the permission of the whole court. The original dissent has been withdrawn making it unnecessary for the whole court to consider the motions for reconsideration filed by the parties. Defendant's remaining contentions on motion for reconsideration are without merit.

*Motion for reconsideration denied.*

DECIDED APRIL 3, 1992 —
RECONSIDERATION DENIED APRIL 22, 1992.

*Maria T. Gonzalez,* for appellant.
*Lewis R. Slaton, District Attorney, Joseph J. Drolet, Henry M. Newkirk, Carl P. Greenberg, Assistant District Attorneys,* for appellee.