A96A0375. DANIELS v. THE STATE.
(473 SE2d 239)

JOHNSON, Judge.

Michael Renard Daniels appeals from his convictions of armed robbery, possession of a firearm during the commission of a felony, and possession of a sawed-off shotgun, in connection with the armed robbery of a convenience store.

1. Daniels contends that the trial court erred in denying his motion to suppress evidence of a pretrial photographic lineup from which the victim had identified him, and to suppress any in-court identification of him by the victim. The victim was able to observe the

perpetrator from a close distance in a well-lighted store for six or seven seconds before the perpetrator put on a mask. The victim identified Daniels from an array of six photographs, all of males of similar age and appearance. The identification was made without hesitation, and while the victim indicated that he was less than 100 percent certain, he stated he was more than 90 percent certain of his identification of Daniels.

Furthermore, the detective's instructions to the victim prior to the photographic lineup not to pay attention to hairstyles, backgrounds, clothing, or facial hair did not unduly emphasize the length of defendant's hair. In any event, the victim testified that the perpetrator wore a wool cap over his hair so that hair played no part in the identification.

Considering the totality of the circumstances, we conclude that any suggestiveness in the pretrial identification procedures did not rise to a substantial likelihood of mistaken identification. Therefore, the trial court did not err in refusing to suppress the victim's identification testimony at trial or evidence of the victim's pretrial identification of Daniels. *Sanders v. State*, 204 Ga. App. 37, 39 (5) (419 SE2d 24) (1992); *Jones v. State*, 251 Ga. 361, 362 (1) (306 SE2d 265) (1983).

2. Contrary to Daniels' assertion, there was sufficient proof that the barrel of the shotgun found in his possession was less than 18 inches long, as required for a conviction under OCGA § 16-11-122. Officer Ramsey testified that: "It had to be shorter than, I believe, 18 inches for us to make the charge. I don't recall right off the top of my head exactly how much we measured. But in order for us to make the charge, that's what we measured and charged him with." Officer Clay stated: "I believe the barrel was about 14 inches on it." A photograph of the shotgun found in Daniels' possession was shown to the victim who testified that it looked like the shotgun used in the robbery and that the shotgun used in the robbery was "maybe like one foot long." Additionally, a photograph of the shotgun found in Daniels' possession was admitted into evidence and thus was available to the jury in addressing the issue of the length of the barrel of the shotgun. If not separately, then in the aggregate, this evidence was sufficient to authorize a rational trier of fact to conclude beyond a reasonable doubt that the shotgun found in Daniels' possession had a barrel length of less than 18 inches. The evidence was sufficient to support the verdict of guilty of possession of a sawed-off shotgun under the standard announced in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

3. Daniels argues that the trial court erred in denying his motion to suppress evidence found in an automobile in which he was a passenger. He contends that the reason the officer gave for stopping the car, that the driver made an improper turn by turning without sig-

naling, was insufficient because there was no evidence that he was required to signal before turning. We disagree and affirm the trial court's decision.

"When reviewing a trial court's decision on a motion to suppress, this court's responsibility is to ensure that there was a substantial basis for the decision. The evidence is construed most favorably to uphold the findings and judgment, and the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous. Further, since the trial court sits as the trier of fact, its findings are analogous to a jury verdict and will not be disturbed if there is any evidence to support them." (Citations and punctuation omitted.) *State v. Burnett*, 220 Ga. App. 133, 134 (469 SE2d 324) (1996).

OCGA § 40-6-123 (a) provides, in relevant part, that no person shall turn a vehicle until such movement can be made with reasonable safety, and that he shall not so turn any vehicle without giving an appropriate signal.

The parties in this case have been unable to locate the transcript from the suppression hearing and have entered into a written stipulation in which they agree that the officers' testimony at the suppression hearing was the same as their testimony at trial. The trial transcript shows that an eyewitness to the Gwinnett County armed robbery described the car used to flee the scene as a red Mustang GT with chrome-plated wheels. The officer relayed this information to a dispatcher so that a lookout could be broadcast to DeKalb County police, since the car was seen traveling south toward DeKalb. Atlanta Police Officer Wareham testified that while he and Officer Ramsey were on patrol, he observed a red Mustang with chrome wheels make an "improper" turn. Wareham later elaborated by stating that the driver turned without signaling. Daniels was in the passenger's seat. Wareham added, though without elaborating on this point, that he was alerted by DeKalb County of the vehicle. Likewise, Officer Ramsey referred to the car as "the listed auto." The record contains no other testimony from these officers concerning their basis for the stop. Considering the unrefuted testimony that the turn was improper, that the car was the subject of a police bulletin, and the deference to be given the trial court in its ruling on the motion to suppress, the trial court's decision must be affirmed.

The dissent relies upon *Clark v. State*, 208 Ga. App. 896 (432 SE2d 220) (1993), and *State v. Jones*, 214 Ga. App. 593 (448 SE2d 496) (1994), as authority for its position that the stop was not justified. Neither case requires a reversal here. In addition to the fact that *Clark* serves as physical precedent only, both cases are clearly distinguishable from the case before us.

In *Clark*, there was clear evidence that the stop was pretextual

and that no traffic laws had been violated. The police officer in that case was assigned to a special drug unit and had contacted car rental agencies in the area concerning cars involved in drug stops. On the day of the stop, the officer was traveling 300 feet behind Clark on I-75 northbound. No other cars were within the officer's eyesight. Clark merged onto an exit ramp without using his turn signal. When the officer noticed that Clark was driving a rental car, he decided to stop him, purportedly to investigate the lane change violation. Reasoning that OCGA § 40-6-123 (a) did not require the use of a turn signal for the lane change because there were no other vehicles in the area and the driver was making only a minor shift to the right to access the exit ramp, this Court found no clear violation of the statute and held that the officer was not justified in making the stop.

Similarly, in *Jones* there was some evidence that the stop was pretextual and that the defendant violated no traffic laws. A police car was parked on the street with its blue lights activated when Jones approached and then made a U-turn without signaling. The officer in that case testified that in his experience, many people for various reasons attempt to turn back when they see police vehicles or blue lights. This Court upheld the trial court's grant of the motion to suppress, holding that "[b]ecause no other drivers were on the road, [Jones] was not required to signal his intention to turn." Id. at 594.

Unlike in *Clark* and *Jones*, where it was clear from the record that no traffic laws were violated, we have no evidence before us refuting the officer's testimony that the turn was improper. There being evidence to support the trial court's judgment, we affirm it. See generally *State v. Holcomb*, 219 Ga. App. 231, 233 (464 SE2d 651) (1995).

We also note that while it is unclear from the record whether the officers heard the radio broadcast before or after making the stop, we need not reach the question of whether that information itself provided sufficient basis for the stop, because the unrefuted testimony that the turn was improper was sufficient standing alone.

4. Next, Daniels contends that the trial court erred in admitting as similar transaction evidence a copy of his conviction for armed robbery predicated on a guilty plea which he now contends was not freely and voluntarily given. This argument is essentially the same as that decided adversely to him in *McCann v. State*, 203 Ga. App. 880, 881 (2) (418 SE2d 144) (1992). We decline Daniels' invitation to overrule that decision.

5. Three enumerations of error concern the adequacy of the evidentiary foundation for admission of a videotape. In each instance, Daniels argues that the State failed to satisfy the criteria set forth in *State v. Berky*, 214 Ga. App. 174 (447 SE2d 147) (1994). We note that the *Berky* decision was vacated by the Supreme Court in *Berky v.*

*State*, 266 Ga. 28, 30 (463 SE2d 891) (1995), albeit on other grounds. Assuming that the *Berky* criteria apply in this case (see Judge Smith's special concurrence in *Freeman v. State*, 216 Ga. App. 319, 322 (1) (454 SE2d 196) (1995)), and further assuming that one or more of the criteria were not satisfied, we nevertheless find no harm in the court's admission of the videotape in this case.

We note at the outset that the videotape at issue did not depict the crime for which Daniels was charged in this case, but showed a robbery of another convenience store by a man wielding a shotgun who escaped in a small red car, introduced by the State as evidence of a similar transaction. That robbery occurred the morning after the one with which Daniels was charged in this case. Daniels pled guilty to the armed robbery and possession of a sawed-off shotgun captured in the videotape. By pleading guilty, Daniels admitted having committed the offenses alleged in the indictment, which were remarkably similar to the crimes with which he was charged in this case. A certified copy of his conviction in that case was entered into evidence as a similar transaction.

Witnesses at trial presented overwhelming evidence of his guilt. The convenience store clerk in this case testified that the perpetrator wore a woolen cap or mask and carried a foot-long shotgun and a canvas bag. He identified Daniels in a pretrial photographic lineup and again at trial as the man who robbed him with a shotgun. A customer who arrived at the store just as the robber was leaving testified that the robber fled in a red Mustang with chrome wheels. When police later stopped the red Mustang with chrome wheels in which Daniels rode, they found a sawed-off shotgun, a blue ski mask and a cloth bag. In light of the overwhelming evidence of his guilt, admission of the videotape of a robbery to which he pled guilty was harmless error. See *Stewart v. State*, 184 Ga. App. 289 (361 SE2d 268) (1987); see generally *Ansley v. State*, 198 Ga. App. 452, 453 (402 SE2d 73) (1991).

*Judgment affirmed. Birdsong, P. J., Pope, P. J., Andrews, Blackburn and Smith, JJ., concur. Beasley, C. J., concurs in judgment only. McMurray, P. J., and Ruffin, J., dissent.*

McMURRAY, Presiding Judge, dissenting.

I respectfully dissent as I believe the trial court erred in denying defendant's motion to suppress evidence found in the automobile in which defendant was a passenger. The evidence in question, including a sawed-off shotgun, was found after a stop of the vehicle for making a turn without signaling. As construed in *Clark v. State*, 208 Ga. App. 896, 897 (1) (432 SE2d 220), OCGA § 40-6-123 requires a signal prior to turns or lane changes only if necessary for "reasonable safety." The holding in *Clark*, while physical precedent only, was embraced by a full panel of this Court in *State v. Jones*, 214 Ga. App.

593 (448 SE2d 496).

My reading of the trial transcript in the case sub judice reveals no evidence that reasonable safety required a signal to precede the turn made by the vehicle in which defendant was a passenger. I do not know what type of turn defendant made, the conditions during which the turn was made, whether reasonable safety required the use of a turn signal, or any other factors which would support the officers' conclusory testimony that the vehicle in which defendant was riding turned improperly. Indeed, if reasonable safety was not involved, then a turn signal was not required pursuant to OCGA § 40-6-123. See *State v. Goodman*, 220 Ga. App. 169 (2) (469 SE2d 327) (1996). In addition, the record does not reveal any independent basis for stopping the vehicle other than the allegedly improper turn. Therefore, in my view, the stop of the automobile occupied by defendant cannot be justified, and the trial court should have granted defendant's motion to suppress the evidence found in the automobile. *State v. Jones*, 214 Ga. App. 593, supra; *Clark v. State*, 208 Ga. App. 896, 897 (1), supra.

Contrary to the majority's view of the evidence, I find nothing in Officer Wareham's and Officer Ramsey's trial testimony which in any way indicates that the officers had an independent basis for stopping the car due to a police radio broadcast concerning it. Indeed, it is my view that even a liberal reading of Officer Wareham's and Officer Ramsey's testimony does not authorize a finding that these officers were aware that a police alert had been dispatched on the suspect vehicle at the time of the stop. And to this extent, I am compelled to note that the majority's statement — "Wareham added, though without elaborating the point, that he was alerted by DeKalb County of the vehicle" — leads readers into believing that Officer Wareham testified that he and Officer Ramsey stopped the suspect vehicle because a police lookout had been dispatched for the vehicle from DeKalb County. The fact is, Officer Wareham's testimony supports no such inference. Indeed, the portion of Officer Wareham's trial testimony upon which the majority relies amounts to nothing more than the officer's unresponsive answer to a question concerning whether he had made further examination of the suspect vehicle *after the stop*. The entirety of Officer Wareham's testimony regarding the reason he and Officer Ramsey stopped the suspect vehicle, as well as the portion of Officer Wareham's testimony the majority references in support of the conclusion about the DeKalb County alert, provides as follows:

"[STATE'S ATTORNEY:] Were you involved in the arrests of the occupants of a red Mustang on that day? [APPELLANT:] Yes, ma'am, I was. Q. Please tell the jury how that occurred. A. Okay. On the date and time in question, myself and Officer Ramsey were patrolling

around Eastlake Meadows — it's a housing development in the City of Atlanta — when we observed the vehicle that the Accused was a passenger in. The vehicle was driven by a Rocky Turnquest. We observed the vehicle making an improper turn. At that time we blue-lighted the vehicle and began to approach the vehicle. At that time Officer Ramsey observed a shotgun sticking from underneath the passenger's seat. At that time we removed the subjects from the vehicle and placed them under arrest. Q. Can you describe the car that they were driving? A. It was a red Mustang with chrome wheels. Q. I show you a photograph that has been marked as State's Exhibit 5. Can you identify that photograph? A. Yes, ma'am. I took this picture. Q. And when did you take that picture? A. On the date of the incident. Q. And what is that a picture of? A. That's a picture of the Mustang that the Accused was a passenger in. It's on the flat bed. Q. When you say the Accused, who are you referring to? A. Mr. Daniels. Q. And is he the same person who was the passenger in that Mustang on November 23rd of 1993? A. Yes, ma'am. Q. Did you have occasion to make any further examination of the car yourself? A. Yes, ma'am. We were alerted by DeKalb County of the vehicle. Q. Did you remove — did you yourself remove any other items from the car? A. I removed a hood and a beige bag containing currency."

Likewise, the majority's statement — "Officer Ramsey referred to the car as 'the listed auto' " — leads readers into believing that Officer Ramsey testified that he and Officer Wareham stopped the suspect vehicle because it was "listed" on a DeKalb County police alert for the vehicle. The fact is, Officer Ramsey's use of the words "the listed auto" is not a reference to a DeKalb County police alert, but appears merely as jargon the officer employs in describing events. The entirety of Officer Ramsey's testimony regarding the reason he and Officer Wareham stopped the suspect vehicle, as well as the portion of Officer Wareham's testimony regarding "the listed auto," provides as follows:

"[STATE'S ATTORNEY:] Were you on duty on November 23rd, 1993? [OFFICER RAMSEY:] Yes, I was. Q. On that date were you involved in the arrests of the occupants of a red Mustang? A. Yes, I was. Q. Tell the jury how that occurred. A. On the listed date, myself and Officer Wareham were on patrol in the Eastlake Meadows Housing Development. We were driving in the housing development when Officer Wareham saw the listed auto make a left turn without using a turn signal. Officer Wareham effected a stop on the vehicle, at which time Officer Wareham approached the driver's side. I approached the passenger's side."

Since this Court's responsibility in reviewing the trial court's decision on a motion to suppress is " ' "to ensure that there was a substantial basis for the decision, (cit.)" ' " (*State v. Goodman*, 220 Ga.

App. 169, 170, supra), I am compelled to say that the trial court erred in failing to grant the motion to suppress in the case sub judice.

I am authorized to state that Judge Ruffin joins in this dissent.

DECIDED JUNE 28, 1996 —

*David L. Whitman*, for appellant.

*Daniel J. Porter*, District Attorney, *Nancy J. Dupree*, Assistant District Attorney, for appellee.