A98A2332. WILLIAMS v. THE STATE.
(511 SE2d 216)

BARNES, Judge.

Following his indictment for possession of cocaine with intent to distribute, Antonio Williams moved to suppress evidence of the cocaine found in the trunk of his car. After his motion to suppress was denied, Williams stipulated to the remainder of the evidence and the trial court convicted him of the lesser included offense of possession of cocaine. Williams appeals the judgment of conviction and sentence, contending that the trial court erred in denying his motion to suppress because the police were not authorized to stop him and search his trunk. We affirm.

In reviewing a motion to suppress, "[t]he evidence is construed most favorably to uphold the findings and judgment, and the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous. Further, since the trial court sits as the trier of fact, its findings are analogous to a jury verdict and will not be disturbed if there is any evidence to support them." (Citations omitted.) *Morgan v. State*, 195 Ga. App. 732, 735 (3) (394 SE2d 639) (1990).

The evidence presented at the hearing on the motion to suppress showed that while DeKalb County Police Officer Sylvester Simmons was on routine patrol, he received a radio report that a yellow Pontiac had been seen in the same dead-end cul-de-sac where an armed robbery had occurred one week earlier. At the time of that robbery, a "Be on the Lookout" ("BOLO") had been issued for a yellow car, older model, possibly a Pontiac, occupied by two men who were armed with a semi-automatic handgun and a sawed-off shotgun.

Officer Simmons drove to the reported location of the yellow Pontiac, which was being driven by Williams, and followed it for a little over a mile. When Williams changed lanes without using a turn sig-

nal, Simmons decided to stop him because he had made an "improper lane change."[1]

Because the BOLO involved an armed robbery, Simmons did not signal Williams to pull over until another marked police car pulled behind him. Just before he stopped Williams, Simmons noticed that the Pontiac's trunk was bouncing up and down. According to Simmons, "We was a little bit nervous, so I advised the other two cars the trunk was going up and down. We didn't know if someone was in the car or if it was just broken."

After Williams was stopped, Simmons was the first officer to approach the Pontiac. As he walked past the trunk, he "put his hand on the trunk just in case someone was in there, where the trunk don't pop up on me." The trunk did not lock shut after Simmons touched it.

While Simmons was asking Williams for his license and proof of insurance, Officer K. C. McCarthy walked up to the rear of the Pontiac and noticed that the trunk was moving up and down approximately one or two inches even though the car was no longer moving.[2] McCarthy then opened the trunk "[f]or safety reasons. Basically, I thought there would be somebody inside the trunk, the way it was moving but not rising completely open." After he opened the trunk, McCarthy did not find anyone in the trunk, but he did see a sawed-off shotgun lying in plain view. He then advised Officer Simmons that a gun was in the trunk.

When he learned that a gun had been found in the trunk, Simmons asked Williams if the officers "could take a look at it" and Williams said, "Sure, go ahead." Williams and Simmons then walked to the rear of the automobile and Simmons saw the shotgun lying in the trunk in plain view. After Officer McCarthy removed the gun from the trunk, Simmons wrote down its serial number and asked Williams to sit in his patrol car while he checked the serial number of the gun. Simmons did not consider Williams to be under arrest at that time and told him that he was not under arrest.

While Officer Simmons checked the serial number of the gun, Officer McCarthy remained by the trunk of the Pontiac and Officer McWhorter joined him. McWhorter testified that the Pontiac's trunk was already open when he walked up and that when he looked inside the trunk he saw a clear plastic bag containing "off-white chunks of material" lying in plain view on the left side of the trunk. This bag

---

[1] It cannot be determined from the record whether Simmons was directly behind Williams at the time he changed lanes without signaling. Simmons testified that he maintained a distance of approximately four to five car lengths while following Williams. However, Williams made the lane change after he turned onto another street and had traveled approximately 20 to 35 yards. There was no testimony as to whether Simmons had also turned onto this street at the time Williams changed lanes.

[2] McCarthy did not see Simmons place his hand on the trunk.

was removed from the trunk and the off-white chunks tested positive for cocaine.

During the motion to suppress hearing, Officers Simmons and McCarthy acknowledged that they did not see the gun in the trunk until McCarthy opened the trunk. They also testified that they never saw the plastic bag containing the off-white chunks until after it was discovered by McWhorter. The trial court denied Williams' motion to suppress, finding that the officers had the right to open the unlocked trunk in order "to assure themselves that they are not going to be attacked or surprised from behind."

1. In his first enumeration, Williams contends the trial court should have granted his motion to suppress because the police were not authorized to stop him based upon his failure to use a turn signal. Relying upon *Bowers v. State*, 221 Ga. App. 886 (473 SE2d 201) (1996) (physical precedent only), *Jones v. State*, 214 Ga. App. 593 (448 SE2d 496) (1994), and *Clark v. State*, 208 Ga. App. 896 (432 SE2d 220) (1993) (physical precedent only), Williams asserts that his failure to signal before changing lanes was not a traffic offense because the record is silent about the presence of other vehicles on the road at the time he changed lanes.

In each of the cases relied upon by Williams, this Court held that a driver was not required to signal an intent to change lanes or turn when the record affirmatively showed there were no other vehicles in the area based upon the following language in OCGA § 40-6-123: "No person shall . . . change lanes or move right or left upon a roadway unless and until such movement can be made with reasonable safety. . . . A signal of intention to turn right or left or change lanes when required shall be given continuously for a time sufficient to alert the driver of a vehicle proceeding from the rear in the same direction or a driver of a vehicle approaching from the opposite direction." (Emphasis omitted.) *Bowers*, 221 Ga. App. at 887-888; *Jones*, 214 Ga. App. at 594; *Clark*, 208 Ga. App. at 897-899.

In *Daniels v. State*, 222 Ga. App. 29 (473 SE2d 239) (1996), this Court, in a whole court decision, distinguished *Clark* and *Jones* and affirmed the trial court's denial of a motion to suppress based on facts similar to those before us now. As in this case, the police officer who stopped the defendant testified that the defendant made an "improper" turn because he failed to signal. Since there was no evidence in the record refuting the officer's testimony that the turn was improper, this Court found the trial court's decision to deny the motion to suppress was supported by the record. 222 Ga. App. at 31-32.

Officer Simmons' testimony in this case that Williams made an improper lane change is also undisputed. As a result, we find that the record supports the trial court's conclusion that the police were

authorized to stop Williams. Id.

2. In his second enumeration of error, Williams contends the trial court should have granted his motion to suppress because there was no probable cause or exigent circumstances justifying Officer McCarthy's decision to open the trunk.[3]

*Terry v. Ohio*, 392 U. S. 1, 16-20 (88 SC 1868, 20 LE2d 889) (1968) and *Adams v. Williams*, 407 U. S. 143 (92 SC 1921, 32 LE2d 612) (1972) "together establish that in appropriate circumstances the Fourth Amendment allows a properly limited 'search' or 'seizure' on facts that do not constitute probable cause to arrest or to search for contraband or evidence of crime." *United States v. Brignoni-Ponce*, 422 U. S. 873, 881 (95 SC 2574, 45 LE2d 607) (1975). For example, "a reasonable search for weapons for the protection of the police officer [is permitted] where he has reason to believe he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U. S. at 27. Likewise, police officers who are lawfully present in a home may conduct a protective sweep of the home "to insure that no one [is] in the home who might pose a security risk to the officers" if the officers have a reasonable belief there may be other occupants in the home who might cause them harm. *State v. Scott*, 176 Ga. App. 887, 889 (2) (339 SE2d 276) (1985). See also *Lentile v. State*, 136 Ga. App. 611, 613 (1) (222 SE2d 86) (1975).

Based on this authority, we find that Officer McCarthy was authorized to open the trunk to insure that no one was in the trunk who might pose a threat to the safety of the officers. The Pontiac matched an armed robbery BOLO and its unlocked trunk was moving after the Pontiac had stopped. Since the protective measures taken by Officer McCarthy were reasonable under the circumstances, the trial court did not err when it denied Williams' motion to suppress. See *Chaney v. State*, 207 Ga. App. 72, 73 (427 SE2d 63) (1993).

*Judgment affirmed. Johnson, C. J., and Smith, J., concur.*

DECIDED JANUARY 26, 1999.

*Teddy R. Price*, for appellant.

---

[3] Williams does not dispute the officers' right to seize the cocaine which was lying in plain view after the trunk was opened.

*J. Tom Morgan, District Attorney, Barbara B. Conroy, Jeanne M. Canavan, Assistant District Attorneys*, for appellee.