A04A1429. BARROW v. THE STATE.
A04A1430. WILLIAMS v. THE STATE.
(605 SE2d 67)

RUFFIN, Presiding Judge.

A jury found Erick Barrow guilty of possessing cocaine with intent to distribute and attempting to elude a police officer. The same jury found his co-defendant, Elkanah Williams, guilty of possessing cocaine with intent to distribute. In Case No. A04A1429, Barrow appeals, and Williams appeals in Case No. A04A1430. Because both cases involve the same facts, we have consolidated them for review. For reasons that follow, we affirm.

On appeal from a criminal conviction, a defendant no longer enjoys a presumption of innocence, and we view the evidence in a light most favorable to support the jury's verdict.[1] Viewed in this light, the evidence demonstrates that on April 16, 2002, Henry County Police Officer Kenneth Freeman was patrolling traffic on the interstate, and his police car was stopped in the median. While monitoring southbound traffic, Officer Freeman saw Barrow driving a gray Mustang with Williams sitting in the passenger seat. Immediately after passing the police car, the Mustang braked so quickly that the front of the car dipped, which made Officer Freeman think that Barrow might be driving under the influence.

Officer Freeman pulled into traffic behind the Mustang, and he saw the driver change lanes without using any turn signals. Officer Freeman activated his blue lights to stop the Mustang, but Barrow did not stop. Officer Freeman then turned on his siren, and Barrow still failed to stop. According to Officer Freeman, he could see Williams "making a lot of furtive movements." Williams began throwing "white blocky substances" out of the car window. Officer Freeman noted various spots along the interstate where the substance landed, and he radioed Mark Amerman, another officer patrolling the same interstate, telling him that drugs were being discarded from a car being pursued. Barrow eventually exited the highway, and Officer Freeman saw Williams throw out "a bunch of bags and stuff," which littered the exit ramp. Barrow finally stopped in a parking lot.

Officer Freeman and Officer Amerman retrieved some of the items thrown from the car, including a block of white substance that did not disintegrate upon hitting the ground. The substance proved to be 24.91 grams of cocaine. Barrow and Williams were subsequently charged with possessing cocaine with intent to distribute, and Barrow was charged with attempting to elude a police officer.

[1] See *Jackson v. State*, 252 Ga. App. 268 (1) (555 SE2d 908) (2001).

*Case No. A04A1429*

On appeal, Barrow challenges the sufficiency of the evidence that he possessed cocaine with intent to distribute. He also contends that the trial court erred in: denying a motion to suppress; failing either to exclude evidence or postpone the trial; and permitting the State to bolster its witnesses. Finally, Barrow argues that the form of the verdict was improper. We address each argument in turn.

1. According to Barrow, the evidence was insufficient to show that he possessed cocaine with the intent to distribute. Specifically, Barrow points to the absence of evidence such as "weighing devices," "large sums of cash," or individually wrapped small baggies of cocaine. Although his argument is not entirely clear, it appears that Barrow contends the State proved, at best, that he merely possessed cocaine, not that he intended to distribute it.

"Although mere possession of cocaine cannot serve as the basis for a conviction for intent to distribute, the intent can be established with expert testimony that the amount of cocaine found was greater than would normally be had for individual use."[2] Here, the trial court certified Officer Amerman as an expert with regard to the delivery and packaging of narcotics for distribution. Officer Amerman testified that the street value of cocaine is over $100 per gram and that the amount of cocaine found by the officers was consistent with distribution of the drug, rather than personal use. Such evidence is sufficient to support the jury's finding that Barrow possessed the cocaine with intent to distribute.[3] This is particularly true here, where the police *recovered* 24.91 grams of cocaine, but the evidence shows that Barrow threw away blocks of suspected cocaine that the officers were unable to recover.

2. Barrow also contends that the trial court erred in denying his motion to suppress. Specifically, Barrow argues that Officer Freeman had no basis for initiating a traffic stop. We disagree.

In reviewing a trial court's ruling on a motion to suppress, we construe the evidence in a light most favorable to the lower court's judgment, and we accept that court's findings of fact unless they are clearly erroneous.[4] "Furthermore, on appeal from the denial of a motion to suppress, we may consider the evidence presented at the hearing on the motion to suppress, as well as that adduced during trial."[5]

---

[2] *Glenn v. State*, 251 Ga. App. 336, 338-339 (2) (553 SE2d 323) (2001).

[3] See id.; *Watkins v. State*, 253 Ga. App. 382, 385 (3) (559 SE2d 133) (2002).

[4] See *Woodward v. State*, 245 Ga. App. 409 (537 SE2d 791) (2000).

[5] *Thomas v. State*, 261 Ga. App. 493, 496 (2) (583 SE2d 207) (2003).

So viewed, the evidence establishes that, after Barrow passed Officer Freeman's patrol car, he braked so suddenly that the front of his car dipped, which made Officer Freeman suspect Barrow of driving under the influence. And Officer Freeman testified that when he pulled behind Barrow, Barrow changed lanes without signaling. According to Officer Freeman, traffic was "medium" at the time, and a turn signal was needed for safety. Although failing to utilize a turn signal does not automatically provide a basis for stopping a motorist,[6] an officer may pull over a motorist for failing to signal when traffic conditions require the use of such signal.[7] Under the circumstances of this case, Officer Freeman was authorized to initiate a traffic stop, and the trial court did not err in denying Barrow's motion to suppress.[8]

3. On the morning of trial, the prosecutor informed Barrow's attorney that he had a videotape from Officer Amerman's patrol car that showed Officer Freeman chasing the Mustang and the plastic bags flying from the car window. Barrow moved to exclude the videotape, arguing that because he opted into reciprocal discovery, the State was required to provide it sooner.[9] In the alternative, Barrow requested a continuance, arguing that he needed time "to deal with [the] tape."

The prosecutor responded that he was unaware of the tape's existence until that morning, that he brought it to the attorney's attention as soon as he learned of it, and that he played the video for Barrow's counsel. The prosecutor further stated that the tape simply reflected what was set forth in the incident report, and thus Barrow was not harmed by the introduction of new evidence. The trial court agreed with the prosecutor and denied Barrow's motion. Barrow challenges this ruling on appeal.

When the State fails to timely provide evidence pursuant to a reciprocal discovery request, the trial court may order the State to permit examination of the evidence, grant a continuance, or, upon a showing of prejudice and bad faith, prohibit the State from tendering the evidence.[10] The trial court retains discretion in determining what remedy, if any, is required to ensure a fair trial.[11] Here, the record shows that the prosecutor showed the video to the defense upon

---

[6] See *Clark v. State*, 208 Ga. App. 896, 897-899 (1) (432 SE2d 220) (1993) (driver not required to utilize turn signal when merging if there are no other cars present).

[7] See *Turner v. State*, 265 Ga. App. 40, 41-42 (2) (592 SE2d 864) (2004); *Reese v. State*, 252 Ga. App. 650, 651-652 (1) (556 SE2d 150) (2001); *Woodward*, supra.

[8] See id.; *Turner*, supra; *Reese*, supra.

[9] See OCGA § 17-16-1 et seq.

[10] See OCGA § 17-16-6; *Gay v. State*, 258 Ga. App. 634, 639 (3) (574 SE2d 861) (2002).

[11] See *Gay*, supra.

learning of its existence. And the video merely confirmed the details of the police report. Under these circumstances, the trial court did not abuse its discretion in admitting the tape.[12]

4. Barrow argues that the trial court erred in permitting the State to bolster its witnesses. Barrow points to Officer Amerman's testimony, in which he said, "Officer Freeman said that the vehicle he was following. . . ." Before Officer Amerman could finish his sentence, Barrow's attorney objected as follows: "I'm going to object to [Officer Amerman] testifying [as] to what Officer Freeman said. I think the proper testimony is what he did as a result." Although the trial court overruled the objection, Officer Amerman never finished his sentence. Nonetheless, Barrow contends that Officer Amerman's testimony constituted improper bolstering.

Given that Officer Amerman never finished his answer, we fail to see how his testimony could be construed as bolstering. Moreover, Barrow does not argue that he was harmed by Officer Amerman's testimony. It follows that this enumeration of error presents no basis for reversal.[13]

5. Finally, Barrow contends that the form of the verdict was improper. However, Barrow failed to object to the form of the verdict at trial, and he has thus waived this issue on appeal.[14]

## Case No. A04A1430

According to Williams, the trial court erred in denying his *Batson* challenge. He also asserts that the trial court erred in: admitting the audio portion of a videotape as part of the res gestae; permitting a witness for the State to make prejudicial statements in front of jurors; and improperly "intimating" a judicial opinion that Williams possessed drugs. Williams also challenges the sufficiency of the evidence. We address each argument in turn.

6. Williams first argues that the trial court erred in denying his *Batson*[15] challenge. After the jury was impaneled and dismissed for the day, Williams' attorney challenged the State's strike of the only African-American in the jury pool. The prosecutor objected to the motion as untimely. The prosecutor nonetheless explained that he struck the potential juror because the juror was not present in the courtroom during jury selection.[16] The trial court denied Williams'

---

[12] See id.; *Browner v. State*, 265 Ga. App. 788, 794 (3) (595 SE2d 610) (2004).

[13] See *Dunn v. State*, 242 Ga. App. 525, 530 (3) (530 SE2d 236) (2000).

[14] See *Baggs v. State*, 265 Ga. App. 282, 285 (4) (593 SE2d 794) (2004).

[15] *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

[16] According to the State, the potential juror failed to return to the courtroom after a break.

motion, and we find no error. As noted by the trial court, a *Batson* challenge made after the jury has been impaneled and sworn is untimely.[17] Furthermore, even though it was not required, the prosecutor gave a race-neutral reason for the strike. Accordingly, this claim of error lacks merit.[18]

7. During trial, the State played for jurors the videotape from Officer Amerman's patrol car. Although Williams objected to the admission of the audio portion of the tape, the trial court permitted the State to play the tape as part of the res gestae. Williams challenges this ruling on appeal.

Res gestae declarations are those that accompany an act or are so connected in time to the act as to be free from suspicion of device or afterthought.[19] And, as this Court recently noted, circumstances surrounding an arrest that constitute

> part of the res gestae may always be shown to the jury along with the principal fact, and their admissibility is within the discretion of the trial court. A trial judge's determination that evidence offered as part of the res gestae is sufficiently informative and reliable as to warrant being considered will not be disturbed on appeal unless that determination is clearly erroneous.[20]

Given that the videotape at issue — including the audio — was made contemporaneously with the incident at issue, the trial court did not err in admitting it as part of the res gestae.[21]

8. Following a lunch break, Williams' attorney informed the trial court that, during lunch, he overheard Officer Amerman talking in a loud voice about Williams' last minute refusal to enter a guilty plea. Williams was concerned that several jurors who were nearby may have heard Officer Amerman's comments. The trial judge called the jurors into the courtroom and asked if they had heard anything about the case during lunch. The jurors denied overhearing any comment. Williams' attorney then asked to question Officer Amerman, but the trial court refused the request. The attorney apparently acquiesced in the trial court's ruling, as he neither renewed his request nor moved for a mistrial.

---

[17] See *Oliver v. State*, 276 Ga. 665, 667 (4) (581 SE2d 538) (2003).
[18] See *Askew v. State*, 254 Ga. App. 137, 142-143 (9) (564 SE2d 720) (2002).
[19] See OCGA § 24-3-3.
[20] (Punctuation omitted.) *Lyons v. State*, 266 Ga. App. 89, 90 (2) (596 SE2d 226) (2004).
[21] See id.

On appeal, Williams contends the trial court erred in preventing him from questioning Officer Amerman about the statement he made in the presence of jurors. However, Williams' acquiescence in the trial court's ruling precludes him from raising this alleged error on appeal.[22] Moreover, since the jurors did not overhear Officer Amerman's statement, we fail to see how Williams was harmed by the trial court's refusal to let him question the officer.

9. Williams also contends that the trial court erred in intimating its opinion in the presence of jurors. When Officer Amerman was being asked whether possession of the amount of drugs found by police was consistent with distribution rather than personal use, Williams objected on the basis that the question "assume[d] facts not in evidence, chiefly that somebody possessed drugs." The trial court overruled the objection, stating that "the jury will decide what facts are in the case, and I think there's sufficient evidence for them to maybe conclude that somebody's possessed some drugs at some point." Williams contends that this statement amounted to an improper opinion on the "ultimate issue." But "[i]t is well settled that remarks of a judge assigning a reason for his ruling are neither an expression of opinion nor a comment on the evidence."[23] Thus, this allegation of error is without merit.[24]

10. Like Barrow, Williams challenges the sufficiency of the evidence supporting his conviction for possessing cocaine with intent to distribute. Specifically, Williams contends that there is no evidence that he possessed the cocaine, which was found on the roadside. We disagree. Given the evidence that Williams refused to stop the car while Barrow was throwing blocks of what appeared to be cocaine out of the window and that police retrieved a sizeable block of cocaine from the roadside, the jury was authorized to find Williams guilty.[25]

11. Finally, Williams argues that the trial court erred in denying his motion to suppress and in failing to grant a continuance. For the reasons set forth in Divisions 2 and 3, these arguments present no basis for reversal.

*Judgment affirmed. Eldridge and Adams, JJ., concur.*

DECIDED SEPTEMBER 16, 2004.

*David E. Slemons*, for appellant (case no. A04A1429).

---

[22] See *Brown v. State*, 242 Ga. App. 347, 349 (2) (529 SE2d 650) (2000).

[23] (Punctuation omitted.) Id.

[24] See id.

[25] See *Jones v. State*, 260 Ga. App. 487-488 (1) (580 SE2d 278) (2003); *Milton v. State*, 232 Ga. App. 672, 673 (1) (503 SE2d 566) (1998).

*Lloyd J. Matthews*, for appellant (case no. A04A1430).
*Tommy K. Floyd, District Attorney, Blair D. Mahaffey, James L. Wright III, Assistant District Attorneys*, for appellee.