## A11A0178. MORGAN v. THE STATE.
### (710 SE2d 922)

PHIPPS, Presiding Judge.

Maurice Morgan appeals his convictions for possessing controlled substances with the intent to distribute and possessing a firearm during the commission of a crime. He contends that the trial court erred by denying his motion to suppress the drug and weapon evidence, confiscated during a search of the vehicle in which he had been traveling as a passenger. Morgan maintains that the search stemmed from an unconstitutional traffic stop and therefore the cited evidence constituted fruit of the poisonous tree. Because the record authorized the trial court's conclusion that the traffic stop was supported by probable cause that the driver had committed the traffic offense of failure to use a turn signal, we affirm.

This appeal concerns whether the traffic stop was lawful at its inception. Evidence on that issue was presented solely through the law enforcement officer who initiated the traffic stop. He testified to the following. Shortly after noon on December 14, 2008, during his patrol of an area of a recent rash of residential burglaries, the officer, dressed in uniform and driving a marked patrol car, turned into a subdivision. His attention was soon drawn to a Hyundai sedan ahead, because it quickly backed out of a residential driveway. The Hyundai traveled toward the subdivision's entrance/exit and thus passed the officer. There were three men occupying the Hyundai; Morgan was the front seat passenger. The officer perceived stares

given him by the driver and the backseat passenger, and also noted that the Hyundai had an out-of-state tag. He decided to turn around to follow the car and run its tag.

As he was turning around his patrol car, the officer saw the Hyundai stop at the subdivision's entrance/exit and then make a right turn out of the subdivision without any turn signal being given. Within about four seconds, the officer had "gunned the patrol car" to the subdivision's entrance/exit. Looking to his right, he spotted the Hyundai in the middle of a line of vehicles stopped at a stop sign at the next intersection. The Hyundai continued its course of travel, until the officer caught up with it and activated his patrol car's blue lights. The officer testified that he stopped the Hyundai because he suspected that the car's occupants were involved in the neighborhood's recent burglaries and because he believed that he had observed a traffic offense with respect to the Hyundai turning out of the subdivision without a signal being given.

The Hyundai stopped, and the officer walked to the driver's window, which was open. The driver was spraying air freshener. Immediately, the officer detected a strong odor of raw marijuana. All three occupants were ordered out of the Hyundai and handcuffed. The ensuing search of the car yielded raw marijuana, other controlled substances, and firearms.

In this appeal, Morgan maintains that the stop of the Hyundai was unconstitutional, rendering inadmissible the drug and weapon evidence found as a result of the stop.[1] The state, which had the burden to prove the lawfulness of the stop upon Morgan's challenge,[2] argued that the stop was valid on two independent grounds: (i) the officer had probable cause to believe that the driver of the Hyundai had violated a traffic code; and (ii) the officer had acted in good faith in concluding that a traffic offense had been committed. The trial court accepted both grounds and denied Morgan's motion. Given our conclusion that the traffic stop was justified by probable cause, we do not reach the alternative ground asserted by the state.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Tem-

---

[1] See *Brendlin v. California*, 551 U. S. 249 (127 SC 2400, 168 LE2d 132) (2007) (because a traffic stop subjects a passenger, as well as the driver, to Fourth Amendment seizure, a passenger may move to exclude evidence seized during an unconstitutional stop).

[2] See OCGA § 17-5-30 (b) (pertinently providing that "the burden of proving that the search and seizure were lawful shall be on the state"); *State v. Massa*, 273 Ga. App. 596, 597 (615 SE2d 652) (2005) (state has burden to establish existence of circumstances constituting exception to general prohibition against warrantless searches and seizures), citing OCGA § 17-5-30 (b).

porary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a seizure of persons within the meaning of this provision. An automobile stop is thus subject to the constitutional imperative that it not be unreasonable under the circumstances. As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.[3]

The traffic code at issue in this appeal is OCGA § 40-6-123:

No person shall ... turn a vehicle to enter a private road or driveway or otherwise turn a vehicle from a direct course ... unless and until such movement can be made with reasonable safety. No person shall so turn any vehicle without giving an appropriate and timely signal. ... A signal of intention to turn right or left or change lanes when required shall be given continuously for a time sufficient to alert the driver of a vehicle proceeding from the rear in the same direction or a driver of a vehicle approaching from the opposite direction.[4]

Pertinently, "[t]he statute's language indicates that a turn signal is not required if changing lanes [or making a turn] without a signal is reasonably safe."[5] "Although failing to utilize a turn signal does not automatically provide a basis for stopping a motorist, an officer may pull over a motorist for failing to signal when traffic conditions require the use of such signal."[6]

Morgan maintains that the trial court erred in concluding that the officer had probable cause to believe that the driver of the Hyundai had violated that Code section. Asserting that the evidence failed to show any vehicle in proximity to the Hyundai about the time it turned out of the subdivision, Morgan points out that the officer testified that, when he saw the Hyundai stopped at the subdivision's entrance/exit (just before the Hyundai turned out of the subdivision): (i) his patrol car was "maybe 250 — 250 yards, maybe 300 yards"[7] behind the Hyundai; and (ii) he saw no vehicle travel in front

---

[3] *Whren v. United States*, 517 U. S. 806, 809-810 (II) (116 SC 1769, 135 LE2d 89) (1996) (citations and punctuation omitted).

[4] OCGA § 40-6-123 (a), (b).

[5] *Huynh v. State*, 239 Ga. App. 62, 63 (1) (518 SE2d 920) (1999).

[6] *Barrow v. State*, 269 Ga. App. 635, 637 (2) (605 SE2d 67) (2004) (footnotes omitted).

[7] After the officer gave this distance estimate, he was immediately asked, "[H]ow many

of the Hyundai. Relying on *Bowers v. State*[8] and *Clark v. State*,[9] Morgan argues that no turn signal was required before the Hyundai turned out of the subdivision.

As decisions not concurred in by all panel members, *Bowers* and *Clark* do not constitute binding precedent.[10] What is more, they are inapposite. In each case, the driver was not required to signal an intent to turn or change lanes because the evidence affirmatively and undisputedly showed that there was no other vehicle nearby.[11] That is not the case here.

Although the officer's observations at the moment the Hyundai was stopped at the subdivision's entrance/exit (and just before the Hyundai turned out of the subdivision) are certainly relevant, the dispositive inquiry remains: whether the seizure itself (the traffic stop) was lawful, and that inquiry "depends in turn upon whether, *at the moment the [seizure] was made*, the officer[ ] had probable cause to make it."[12]

> A warrantless [seizure] is constitutionally valid if at the time of the [seizure] the arresting officer has probable cause to believe the accused has committed or is committing an offense, and probable cause exists if the arresting officer has knowledge and reasonably trustworthy information about facts and circumstances sufficient for a prudent person to believe the accused has committed an offense.[13]

The principal components of a determination of probable cause are

---

football fields behind the [Hyundai] was it when you observed them take the turn?" The officer answered, "One, if not less than one. I wasn't that far behind." When the topic was revisited, the officer estimated the distance as "probably 80 yards — 90 yards." This court is bound to construe the evidence most favorably to the upholding of the trial court's findings and judgment. *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).

[8] 221 Ga. App. 886 (473 SE2d 201) (1996) (physical precedent only).

[9] 208 Ga. App. 896 (432 SE2d 220) (1993) (physical precedent only).

[10] See *Jacobs v. State*, 299 Ga. App. 368, 375 (2) (e), n. 6 (683 SE2d 64) (2009), citing Court of Appeals Rule 33 (a).

[11] See *Bowers*, supra at 888 (no basis for initiating a traffic stop for violation of OCGA § 40-6-123, where the nearest following car was approximately 100 yards away and there was no evidence to suggest that the road or traffic conditions were such that it was unsafe for the defendants to change lanes without using a turn signal); *Clark*, supra at 897-898 (1) (no basis for initiating a traffic stop for violation of OCGA § 40-6-123, where the officer's car was approximately 300 feet behind the defendant's vehicle, the defendant simply continued straight in his lane to exit, and it was undisputed that no other vehicles were in the vicinity of the defendant's vehicle).

[12] *Beck v. Ohio*, 379 U. S. 89, 91 (85 SC 223,13 LE2d 142) (1964) (emphasis supplied).

[13] *Patterson v. State*, 274 Ga. 713, 715-716 (2) (559 SE2d 472) (2002) (citation omitted); see *Harvey v. State*, 266 Ga. 671, 672-673 (469 SE2d 176) (1996) (probable cause determination concerns the facts and circumstances known to the arresting officer at the time the arrest was made).

"the events which occurred leading up to the stop or search, and then the decision whether these historical facts" amounted to probable cause.[14] In this case, the officer testified about additional facts and circumstances from which he concluded that other vehicles were in close spatial and temporal proximity of the Hyundai stopped at the subdivision's entrance/exit such that a turn signal was required.

The officer recounted that, when he reached the subdivision's entrance/exit within about four seconds of the Hyundai's right turn therefrom, he saw one or two cars stopped in front of the Hyundai and one or two cars already stopped behind it. The officer acknowledged that he had not seen from where those other vehicles had come. However, he testified, during those few seconds that he had been "gunning" his patrol car through the subdivision to catch up with the Hyundai, he kept a "clear view" of the subdivision's entrance/exit and not a single vehicle passed in front of it.

In addition, the officer testified, there was only one ingress onto that stretch of road between the subdivision's entrance/exit and the intersection at which the Hyundai and those other cars had stopped — a distance of "probably 80 yards — 90 yards." Across the street from the subdivision's entrance/exit was a driveway for an apartment complex. That driveway was offset from the subdivision's entrance/exit by only ten to fifteen feet, thus creating essentially an "intersection." Due to multiple signs posted at the subdivision's entrance/exit, however, the officer's view of that driveway had been obstructed during the time he was turning around his patrol car to follow the Hyundai and until he made his way back to the subdivision's entrance/exit.

We agree with Morgan that the state failed to adduce *direct* evidence showing, at the moment the Hyundai was at the subdivision's entrance/exit, the precise location of those vehicles that were later observed stopped either in front of or behind the Hyundai at the next intersection. Notwithstanding, "circumstantial evidence may give rise to probable cause as long as it is sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense."[15]

Furthermore, the quantum of evidence necessary to establish probable cause is much less than that level required to prove guilt

---

[14] *Ornelas v. United States*, 517 U. S. 690, 696 (116 SC 1657, 134 LE2d 911) (1996); *Murphy v. State*, 286 Ga. App. 447, 449 (649 SE2d 565) (2007) (in determining whether probable cause existed, the totality of the circumstances must be considered).

[15] *McKenzie v. State*, 208 Ga. App. 683, 685 (1) (431 SE2d 715) (1993) (citation and punctuation omitted); see *Murphy*, supra (probable cause may be supported by circumstantial evidence).

beyond a reasonable doubt.[16] "'[B]eyond a reasonable doubt' is more than 'clear and convincing evidence,' which is more than 'preponderance of the evidence,' which, in turn, is more than mere 'probable cause.'"[17] "The test of probable cause requires merely a probability — less than a certainty but more than a mere suspicion or possibility."[18]

In denying Morgan's motion to suppress, the trial court determined that the traffic stop was supported by the officer's probable cause to believe that a turn signal violation had occurred. This determination rested upon the trial court's express finding that a reasonable inference arose that vehicles stopped at the stop sign along with the Hyundai had exited the apartment complex driveway at a time such that the driver of the Hyundai was required to signal his intent to turn.[19]

> When an appellate court reviews a trial court's order concerning a motion to suppress evidence, the appellate court should be guided by three principles with regard to the interpretation of the trial court's judgment of the facts. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support [them]. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.[20]

An appellate court reviews the legal conclusions underpinning a denial of a motion to suppress de novo.[21]

Construing the evidence most favorably to the trial court's findings and judgment, we cannot conclude that the trial court's

---

[16] See *Murphy*, supra at 448.

[17] *Monroe v. Sigler*, 256 Ga. 759, 761 (6) (353 SE2d 23) (1987).

[18] *Brown v. State*, 269 Ga. 830, 831 (2) (504 SE2d 443) (1998) (citation and punctuation omitted).

[19] See *Miller v. State*, 288 Ga. 286, 287 (1) (702 SE2d 888) (2010) (instructing that a court reviewing ruling on motion to suppress must focus on facts found by the trial court in its order, because the trial court sits as the trier of fact).

[20] *Tate*, supra (citations, punctuation and emphasis omitted), reiterated in *Miller*, supra at 286-287 (1); see *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).

[21] *Vansant*, supra; accord *Ornelas*, supra (as a general matter, determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal, while findings of historical fact are reviewed only for clear error).

factual findings were clearly erroneous; rather, the trial court was authorized to find that the evidence placed vehicles in close spatial and temporal proximity to the Hyundai when it made its turn such that the officer had probable cause to believe that the driver of the Hyundai had violated OCGA § 40-6-123 by turning without signaling.[22] Bound by the applicable standard of review,[23] we must reject Morgan's challenge to the denial of his motion to suppress the drug and weapon evidence; consequently, Morgan has demonstrated no basis to overturn his convictions.[24]

*Judgment affirmed. Andrews and McFadden, JJ., concur.*

DECIDED JUNE 2, 2011.

*Mumford & Myers, Albert A. Myers III*, for appellant.
*Richard R. Read, District Attorney, Roberta A. Earnhardt, Assistant District Attorney*, for appellee.

---

[22] See *Salinas-Valdez v. State*, 276 Ga. App. 732-733 (1) (624 SE2d 278) (2005) (probable cause that OCGA § 40-6-123 was violated, where driver changed lanes without signaling and then drove in front of patrol car, while traffic was "medium heavy to heavy" with approximately 20 vehicles "nearby traveling the same direction," and where officer opined that the lane change was unsafe); *Johnson v. State*, 249 Ga. App. 29, 30 (1) (546 SE2d 922) (2001) (probable cause that OCGA § 40-6-123 was violated, where driver changed lanes three times without signaling and there were "three or four cars on the roadway"); *McBride v. State*, 246 Ga. App. 151-152 (539 SE2d 201) (2000) (probable cause that OCGA § 40-6-123 was violated, where driver turned at an intersection onto a roadway about 25 yards away from where officer was attempting to exit a parking lot and travel upon the same roadway; inter alia, vehicles were in "close proximity to each other"); *Tukes v. State*, 236 Ga. App. 77 (1) (511 SE2d 534) (1999) (probable cause that OCGA § 40-6-123 was violated, where there was evidence that the subject vehicle "drifted from — turned from the slow lane to the middle lane in traffic, vehicles coming up from the rear traveling to his left and then went back into the slow lane without signaling"); *Daniels v. State*, 222 Ga. App. 29, 31 (3) (473 SE2d 239) (1996) (traffic stop for failure to signal turn was lawful, considering the unrefuted testimony by an officer that the turn was "improper," together with the deference to be given trial court's ruling on suppression motion) (whole court).

[23] See *Tate*, supra; *Vansant*, supra. See generally *Tennille v. State*, 279 Ga. 884, 885 (2) (622 SE2d 346) (2005) (whether evidence was sufficient to rebut any inference that arose was a question for the trier of fact).

[24] See *Whren*, supra at 819.