In the Supreme Court of Georgia

Decided:  March 5, 2018

S17A1348.  DOUGLAS v. THE STATE.

HUNSTEIN, Justice.

Appellant Anthony Lee Douglas was convicted of malice murder and associated offenses in connection with the shooting deaths of Keith Davis and Charles Avent and the wounding of Sheldon Thomas.   On appeal, Appellant contends that the trial court erroneously denied his motion to suppress and improperly admitted other acts evidence under OCGA § 24-4-404 (b).  Though we conclude that Appellant was erroneously sentenced, we otherwise affirm.[1]

---

[1] In April 2014, a Clayton County grand jury indicted Anthony Lee Douglas as follows: counts one and two – malice murder (Keith Davis and Charles Avent); counts three and four – felony murder based on aggravated assault with a deadly weapon (Davis and Avent); counts five and six – felony murder based on armed robbery (Davis and Avent); counts seven through nine – aggravated assault with intent to rob (Davis, Avent, and Sheldon Thomas); counts ten through twelve – aggravated assault with a deadly weapon (Davis, Avent, and Thomas); counts thirteen through fifteen – armed robbery (Thomas, Davis, and Avent); counts sixteen and seventeen – aggravated battery based on rendering left elbow and spine useless (Thomas); count eighteen – aggravated assault (Thomas); counts nineteen through twenty-six – possession of a weapon during the commission of a crime (based on murder of Davis, murder of Avent, aggravated assault of Thomas, aggravated assault of Davis, aggravated assault of Avent, armed robbery of Thomas, armed robbery of Davis, and armed robbery of Avent).  Following a trial conducted May 4-7, 2015, a

We begin by examining the evidence adduced during trial, reviewing the evidence in a light most favorable to the verdicts. The victims – Charles Avent, Keith Davis, and Sheldon Thomas – were on a forested path walking toward the Texaco gas station near Highway 42 in Clayton County, Georgia, when they were approached by an individual in a black nylon jacket. Davis greeted the man, whom he recognized, and conversed with him for several minutes; the man asked for money during the conversation, but no one in the trio was able to oblige. According to Thomas, the man pulled a pistol from the pocket of his jacket and ordered the men to empty their pockets and then lie on the ground.

---

jury found Appellant guilty of all counts.

Appellant was sentenced on May 28, 2015, as follows: count one – life imprisonment without the possibility of parole; count two – life imprisonment without the possibility of parole consecutive to count one; count nine – twenty years' imprisonment consecutive to count two; count twelve – twelve months' imprisonment consecutive to count nine; count thirteen – twenty years' imprisonment consecutive to count twelve; count sixteen – twenty years' imprisonment consecutive to count thirteen; count seventeen – twenty years' imprisonment concurrent with count sixteen; count eighteen – twenty years' imprisonment concurrent with count seventeen; counts nineteen through twenty-six – five years' imprisonment consecutive to the count preceding it, for a total of two consecutive life sentences without the possibility of parole plus one-hundred years and twelve months. All other counts were merged or vacated by operation of law. Appellant filed a motion for new trial in June 2015. The trial court denied the motion in October 2016; Appellant was granted an out-of-time appeal in December 2016, and timely filed a notice of out-of-time appeal several days later. This case was docketed to the August 2017 term and was thereafter submitted for a decision on the briefs.

2

Thomas recounted at trial that the assailant told the men, "Lay y'alls' a\*\*es on the ground. This don't have sh\*t to do with y'all, it's this snitching a\*\* m\*\*\*\*\*f\*\*\*\*\*." After the three men complied, the assailant shot Davis twice in the head and then shot Avent; Thomas attempted to run away but was shot six times. Thomas, who pretended to be dead, watched the shooter exhaust his ammunition, take money and cigarettes, and then flee. Willie Johnson Jr., who was using a laundromat attached to the Texaco station, heard shots and then observed a man walk quickly from the forested path to a waiting late-model Ford Taurus driven by an older, large-chested black woman; Johnson noted that the black Ford had damage to the front-passenger portion of the car.

Avent was pronounced dead at the scene, and Davis died days later in the hospital; Thomas survived, though he suffered extensive injuries from the shooting. While still in the hospital, Thomas was able to describe the shooter to a sketch artist and tentatively identify Appellant in a photo line-up; Thomas later conclusively identified Appellant at trial, and the State adduced the sketch of the shooter. Approximately a month after the shooting, sheriff's deputies initiated a traffic stop of a late-model black Ford Taurus with front-passenger-side damage being driven by an individual matching Appellant's description.

In the car, officers encountered Appellant, as well as his mother, who was described as an older, heavy-set black woman; the vehicle was registered to Appellant's mother. A search of the vehicle revealed a .40-caliber Glock pistol. At trial, the jury heard testimony from numerous experts that the projectiles removed from the victims had been fired from a .40-caliber Glock pistol and that shell casings recovered from the scene had been expelled from the weapon discovered in the Ford Taurus.

A search of Appellant's residence revealed a black nylon jacket consistent with Thomas's description, as well as handwritten notes and drawings reflecting phrases such as, "Bang bang!," "Keep my banger at all times," and "kill o b killed." The jury also received cell-phone records indicating that, at the time of the shooting, a cell phone belonging to Appellant's mother was within two miles of the scene; likewise, the jury heard testimony that Appellant was known to sometimes use his mother's cell phone and to travel in the Ford Taurus with her. Finally, the jury heard testimony that Appellant and Davis had been friends but that, sometime before the shooting, the friendship had soured after Davis cooperated with an unrelated police investigation involving a friend of Appellant.

1. Although Appellant does not challenge the sufficiency of the evidence, it is our customary practice in murder cases to review the record independently to determine whether the evidence was legally sufficient. Having done so, we conclude that the evidence as summarized above was sufficient to authorize a rational trier of fact to conclude beyond a reasonable doubt that Appellant was guilty of the crimes of which he was convicted. See Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Prior to trial, Appellant moved to suppress any evidence seized during the roadside search of the Ford Taurus. Specifically, Appellant argued that there was insufficient cause to initiate the traffic stop and to conduct the subsequent search. Following a hearing, during which the State presented testimony from the relevant sheriff's deputies, the trial court entered a lengthy order denying the motion. In its order, the trial court concluded that Appellant's failure to signal a right turn during a "high traffic time" in a "high traffic area" was sufficient to warrant the traffic stop; the trial court also determined that a detailed be-on-the-lookout ("BOLO") notice, which generally matched Appellant's appearance and specifically matched his vehicle, would likewise have made the stop lawful. With respect to the subsequent search of the Ford, the trial court concluded that

the officers had probable cause to conduct the search because they detected the odor of burnt or burning marijuana, a scent they had training and experience to recognize. Appellant argues that the trial court's ruling was erroneous; we disagree.

In Tate v. State, 264 Ga. 53 (440 SE2d 646) (1994), this Court discussed the manner in which we review a ruling on a motion to suppress.

> First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Citations, punctuation, and footnote omitted.) Id. at 54. See also Hughes v. State, 296 Ga. 744 (1) (770 SE2d 636) (2015). As an initial matter, the trial court's credibility determinations and findings of fact concerning Appellant's use of a turn signal, whether he and his vehicle resembled the details of the BOLO, the traffic conditions at the time of the stop, the odor of burning or burnt marijuana emanating from the car, and the officer's extensive training and history of recognizing such odors are supported by ample testimony in the

motion hearing; accordingly, the trial court's findings are not clearly erroneous and will not be  disturbed by this Court.

Applying these findings of fact to the ultimate issues of law, we first agree with the trial court that the initial traffic stop was lawful.  OCGA § 40-6-123 generally requires motorists to signal before turning or changing lanes.  See OCGA § 40-6-123 (a) ("No person shall so turn any vehicle without giving an appropriate and timely signal in the manner provided in this Code section."). Relying on a line of decision from the Court of Appeals, Appellant contends that OCGA § 40-6-123 does not always require the use of a turn signal.  See, e.g., Clark v. State, 208 Ga. App. 896 (1) (432 SE2d 220) (1993) (physical precedent only).  Even if this Court were to accept the Court of Appeals' reading of OCGA § 40-6-123 in Clark and its progeny,[2] those cases involve roadways with little, if any traffic.  See Morgan v. State, 309 Ga. App. 740, 743 (710 SE2d 922) (2011) (discussing Clark and similar decisions); Trippe v. State, 219 Ga. App. 250, 250 (464 SE2d 655) (1995) (same). Here, however, the trial court found that Appellant failed to signal before a right turn in a "high traffic area" at a

---

[2] We express no opinion on the Court of Appeals' interpretation of OCGA § 40-6-123 in Clark and its progeny.

"high traffic time" with numerous cars in the vicinity of the intersection; thus, the sheriff's deputies had cause to initiate a traffic stop, see, e.g., Sevilla-Carcamo v. State, 335 Ga. App. 788 (1) (783 SE2d 150) (2016) (probable cause to initiate traffic stop where defendant changed lanes during heavy traffic without signaling).

We likewise agree that probable cause sufficient to justify a warrantless search of the vehicle developed during the course of the traffic stop. The trial court found, based on the testimony presented at the suppression hearing, that the officers had the training and experience to recognize the smell of marijuana and that, during the course of the stop, the officers detected just such an odor emanating from the vehicle. "The odor of marijuana provided probable cause, authorizing the search." United States v. Arrasmith, 557 F2d 1093, 1094 (5th Cir. 1977). See also Merricks v. Adkisson, 785 F3d 553, 560, n.3 (11th Cir. 2015) (recognizing that "the smell of burnt marijuana emanating from a vehicle is sufficient probable cause to search a vehicle" (citing United States v. Tobin, 923 F2d 1506, 1512 (11th Cir. 1991) (en banc)); State v. Folk, 238 Ga. App. 206, 208 (521 SE2d 194) (1999) ("[A] trained police officer's perception of the odor of burning marijuana, provided his ability to identify that odor is placed

8

into evidence, constitutes sufficient probable cause to support the warrantless search of a vehicle.").

3. At trial, the State was permitted to present other acts evidence under OCGA § 24-4-404 (b), namely, that Appellant was involved in a second shooting approximately a month after the murders. Over Appellant's objection, the jury heard testimony that, in May 2013, Corbin Poke asked Appellant for a ride home in exchange for gas money; however, during the ride in the black Ford Taurus, Appellant stopped near an apartment complex in Atlanta where, according to Poke, Appellant threatened Poke with a pistol, forced him out of the vehicle, and shot him. Poke testified that the shooting was entirely unprovoked, and he identified Appellant as the individual who shot him; the casings from the second shooting were fired from the same gun used in the murders. The jury was instructed that it was permitted to consider this evidence for the purposes of motive, identity, and intent; Appellant asserts that this was erroneous.

Assuming without deciding that the admission of the 404 (b) evidence was erroneous, any error was harmless. The evidence of Appellant's guilt was strong – Appellant was identified as the shooter by the surviving victim, he was

9

discovered with the murder weapon while driving a vehicle that had been spotted leaving the murder scene by a second witness, his mother resembled the description of the woman driving the car on the night in question, and his mother's cell phone, which Appellant was known to share with his mother, was in the vicinity of the shooting on the night in question. See Hood v. State, 299 Ga. 95 (4) (786 SE2d 648) (2016) (admission of 404 (b) evidence harmless where evidence of guilt was strong). Moreover, much of Poke's testimony – which connected Appellant to the murder weapon and the Ford Taurus – was cumulative of facts established by other evidence. Accordingly, "it is highly probable that the error did not contribute to the verdict." Peoples v. State, 295 Ga. 44, 55 (757 SE2d 646) (2014) (citation and punctuation omitted).

4. While the evidence was sufficient to sustain Appellant's convictions and we find no merit to his enumerations of error, we do find error in his sentencing.

With respect to the victim Sheldon Thomas, Appellant was sentenced for count nine – aggravated assault with intent to rob, count twelve – aggravated assault with a deadly weapon, count thirteen – armed robbery, count sixteen aggravated battery – bodily harm (elbow), count seventeen – aggravated battery

10

– bodily harm (spine), and count eighteen – aggravated assault (shooting injury to buttocks). However, counts nine and twelve should have merged with count thirteen. See Long v. State, 287 Ga. 886 (2) (700 SE2d 399) (2010) (recognizing that aggravated assault with a deadly weapon merges with armed robbery); Lucky v. State, 286 Ga. 487 (2) (689 SE2d 825) (2010) (recognizing that aggravated assault with intent to rob merges with armed robbery). Likewise, Appellant could not be sentenced separately on counts sixteen, seventeen, and eighteen, as the three injuries were sustained by one victim during a single, uninterrupted criminal act. See Regent v. State, 299 Ga. 172, 175-176 (787 SE2d 217) (2016); Grell v. State, 291 Ga. 615 (1) (732 SE2d 741) (2012). Finally, of the eight sentences imposed for possession of a firearm during the commission of a felony – counts nineteen through twenty-six – all but three must be vacated, one for each victim. Grell, 291 Ga. at 616-617. Accordingly, we vacate the sentences imposed in counts nine and twelve, and we remand this case for the trial court to resentence Appellant appropriately on counts sixteen through twenty-six.

Judgment affirmed in part and vacated in part, and case remanded. All the Justices concur.

11